### THE MADISON.

(Circuit Court of Appeals, Second Circuit. January 9, 1917.)

No. 123.

COLLISION ⬤�covered91—STEAM VESSELS MEETING—CHANGE OF COURSE AFTER PASSING AGREEMENT.

A collision at night on East River, between two meeting tugs with tows alongside, held, on the evidence, due solely to the fault of the upbound tug in changing her course to port in rounding Corlear's Hook, after the exchange of signals to pass port to port.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 187–192.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Lehigh Valley Transportation Company, owner of the steam tug Slatington, against the steam tug Madison; the Delaware, Lackawanna & Western Railroad Company, claimant. Decree for respondent, and libelant appeals. Affirmed.

The following is the opinion of Augustus N. Hand, District Judge:

The libelant's tug Slatington was proceeding up the East River carrying a cattle float on her port side and a car float on her starboard side. The claimant's tug Madison, carrying on her port side a car float, came into view some distance up the river and blew one whistle, to which the Slatington responded by a single whistle. The captain of the Madison says that he was in the center of the stream, a little toward the New York shore; that he saw the red or port lights of the Slatington, and blew the above whistle as a proper signal to pass port to port. The captain of the Slatington, on the other hand, says that he saw the green lights of the Madison, that she was toward the Brooklyn side of the river, and that the natural position would have been to pass starboard to starboard. However this may be, the Slatington answered the signal of the Madison, and therefore was bound to attempt to do all she could to pass port to port. The captain and floatman of the Madison say that they suddenly saw the green lights of the Slatington and realized that she was changing her course. He then blew an alarm, the Slatington blew an alarm, and, though the latter is said to have then changed her course again in an attempt to resume the port position, shortly after a collision occurred.

I think the interpretation of the facts urged by counsel for the claimant is most consistent with the testimony and should prevail. His contention is that the accident was due to the fact that the mate of the Slatington, who was steering the vessel at the time the first whistle was blown, was keeping close to the New York shore to avoid the strong tide setting towards Brooklyn while rounding Corlear's Hook. Indeed, this, I think is admitted by both sides. In coming around the Hook the Slatington would inevitably show her port lights first. If she then still kept towards the New York side of the river, as claimant's witness contends, she would be in such a situation as to show her green lights. The captain of the Madison, having seen only the Slatington's red lights, gave a signal to pass port to port, and was proceeding under a port helm. Suddenly he saw the green lights of the Slatington, realized there was danger, and blew the alarm whistle. The captain of the Slatington, who had in the meantime taken the wheel, returned a counter alarm whistle. The Slatington evidently, after blowing the single whistle, still kept on for a time on the west side of the stream, and in so doing in reality starboarded her helm, instead of porting her helm, as she should have done. When the Madison blew the alarm, the Slatington did port her helm, but it was then too late. The change of course and uncertain movement of the tug Slatington were, I think, the cause of the collision. I cannot see how the accident could ever have occurred if the Slatington, after answering the signal of one whistle, had ported her helm and continued on that course. The Madison is criticized for not proceeding further to port after blowing the first whistle, but I think the testimony indicates that she was proceeding on a gradual course to port that would have been perfectly safe if the Slatington had not changed her course after the signal was given.

The injury seems to have been caused wholly by the negligence of the Slatington, and an interlocutory decree should be granted, dismissing the libel, with costs.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones and Anthony V. Lynch, Jr., both of New York City, of counsel), for appellant.

A. J. McMahon, of New York City, for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

PER CURIAM.   Decree affirmed, with interest and costs.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes